LAW OFFICES OF
O'KEKE & ASSOCIATES, P.C.
801 Franklin Avenue.
Brooklyn, New York 11238
Tel.: (718) 855-9595
Attorneys for plaintiffs

------------------------------------X----------------------------

LORI CROSBY                          : **UNITED STATES DISTRICT COURT**
                                     : **SOUTHERN DISTRICT OF NEW YORK**
            Plaintiff(s),            :
                                     :    CASE No.: 14 CV 564 - PAE
      against                        :
                                     :    CIVIL ACTION
                                     :
THE CITY OF NEW YORK,                :    **COMPLAINT**
JOHN DOE  AND "JANE DOE" 1- 6        :
inclusive, the names of the last    :
defendants being fictious, the true: **PLAINTIFF DEMANDS**
names of the defendants being        :    TRIAL BY JURY
unknown to the plaintiff.            :
                                     :
            Defendant(s).            :
------------------------------------X----------------------------


        TAKE NOTICE, the Plaintiff, Lori Crosby, hereby appears in
this action by her attorneys, The Law Offices of O'keke &
Associates, P.C., and demands that all papers be served upon
them, at the address below, in this matter.


        Plaintiff, Lori Crosby, by her attorneys, The Law Offices
of O'keke & Associates, P.C., complaining of the defendants, The
City of New York, and "John Doe" AND "Jane Doe" 1-6,
collectively referred to as the Defendants, upon information and
belief alleges as follows:


                    <u>**NATURE OF THE ACTION**</u>


1.  This is an action at law to redress the deprivation of

1

rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983 [and § 1985], [and arising under the law and statutes of the State of New York].

## JURISDICTION

2. The jurisdiction of this Court is invoked under 28 U.S.C. §1343(3), this being an action authorized by law to redress the deprivation of rights secured under color of state and city law, statute, ordinance, regulation, custom and usage of a right, privilege and immunity secured to the plaintiff by the Fourteenth Amendment to the Constitution of the United States.  Jurisdiction of this court exists pursuant to 42 USC §1983 and under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3. All causes of action not relying exclusively on the aforementioned federal causes of action as a basis of this Court's jurisdiction are based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear state law causes of action. The events, parties, transactions, and injuries that form the basis of plaintiff's federal claims are identical to the events, parties, transactions, and injuries that form the basis of plaintiff's claims under applicable State and City laws.

4. As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c).

2

## SATISFACTION OF THE PROCEDURAL PREREQUISITES FOR SUIT

5.   All conditions precedent to the filing of this action have been complied with. This action is being commenced within three (3) years of the happening of the event upon which the claim is based.

## PARTIES

8.   Plaintiff resides in New York, New York and is a resident of the State of New York.

9.   The actions which form the underlying basis for this case all took place in the County of New York, within the jurisdiction of the Eastern District of New York.

10.   Defendants "John Doe" and "Jane Doe" 1'through'6 are unknown police officers for the City of New York, acting under color of state law.  They are being sued in both their individual and official capacity.

11.   The Defendant, City of New York is a municipality in the State of New York and employs the Defendants Police Officers.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12.   On or about April 8, 2013, at approximately 9:30PM, the plaintiff was a passenger in a car being driven by her partner.

13.   That as the car plaintiff was in traveled down 110th Street, in Harlem, New York.  The car had come to halt when one of the defendant officers came and knocked on the window of the car and instructed the driver to pull over to the side of the road.

14. That upon the driver of the car complying with the officers instructions, she wound down the window to speak to the defendant officer, to wit the officer first stated that the windows were too dark and then requested for the drivers driving particulars.

15. That the driver complied with the officer's request and the officer proceeded to presumably go and run the drivers information.

16. That after what seemed to be like a very long time, the driver started to enquire form the defendant officers what was taking so long.

17. That as a result of the driver asking the defendant officers to hurry up, the driver was ordered to step out of the car to be arrested. The driver immediately complied.

18. The plaintiff immediately called a lawyer and then asked one of the officers to speak to the lawyer before they arrested her partner, who at this time was in handcuffs already.

19. That one of the defendant officers then grabbed the phone out of plaintiff's hand and switched it off, terminating the call to the lawyer, and then grabbed the plaintiff and slammed plaintiff onto the police car, face down.

20. The plaintiff was crying, scared and confused as to why she had been assaulted by the defendant officers when she had only tried to give the officer her phone.

21. That plaintiff noticed that she was bleeding from the head, as a result of the force in which the defendant officer had slammed the plaintiff on the police car and began to scream and cry aloud. Due to the commotion, several persons stopped and started recording the incident on their phones.

22. That when the defendants realized that people had started to record their actions, they immediately started using

4

their flash lights to distort the recordings, by flashing same in the direction of whoever was recording the incident.

23. That two of defendant officers started feeling all over plaintiff's body, at which time plaintiff requested that if they wanted to search her that they should call a female officer. However the defendant officers refused and continued to touch the plaintiff in a sexually assaulting manner over various parts of her body, causing the plaintiff to scream even louder and for a larger crowd to start gathering.

24. That as the crowd started raising their voices towards the defendant officers in disapproval of their actions, the defendant officers grabbed plaintiff and carried her length wise to the door of the police car. They then opened the door and threw plaintiff in lengthwise and the slammed the door to the car.

25. That plaintiff landed in the car lengthwise, with her head towards the opposite rear door of the police car. That as plaintiff was trying to pull in her legs; she felt door slam and the glass of the police car shatter everywhere.

26. That plaintiff was petrified thinking that that the defendant officers were trying to kill or seriously injure her simply for handing them a cell phone.

27. The plaintiff was then transported to the precinct, where she was handcuffed to a pole for over thirteen (13) hours, with no food, no drink and no access to any restroom facilities.

28. That after being detained at the precinct for several more hours, the plaintiff was then transported to the Central Bookings Division of the Criminal Court, County of New York.

29. The plaintiff remained in the custody of the defendants at Central Booking, until she was brought before a judge the following morning and released on her own recognizance.

30. The plaintiff was charged with NY PL 205.30 Resisting arrest amongst other charges, and caused to return to the court two more times before the matter was adjourned in contemplation of dismissal.

31. The decision to arrest the plaintiffs was objectively unreasonable under the circumstances.

32. That while plaintiff was being detained, the defendants individually and/or collectively completed arrest paperwork, in which they swore in part, that the plaintiff had committed a crime and/or offense.

33. The factual claim by the defendant officers were materially false and the defendant officers knew it to be materially false at the time they first made it, and every time thereafter when they repeated it.

34. That the defendant officers forwarded these false allegations to the New York County District Attorney ("NYCDA") in order to justify the arrests and to persuade the KCDA to commence the plaintiff's criminal prosecution.

35. The plaintiff remained in the detention of the defendants for a second day, before the plaintiff was released through a side door.

36. At no time prior to or during the above events was there probable cause to arrest the plaintiff, nor was it reasonable for the defendants to believe that probable cause existed.

37. At no time did any defendant take any steps to intervene in, prevent, or otherwise limit the misconduct engaged in by the defendants against the plaintiff.

38. The defendant officers intentionally and deliberately gave

false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

39. As a direct and proximate result of defendants' actions, plaintiffs suffered and continue to suffer injuries, including but not limited to emotional distress, nightmares, and unwarranted severe anger bouts some or all of which may be permanent.

40. The false arrest of plaintiff, plaintiff's wrongful imprisonment because of defendants' knowledge of a lack of any legitimate cause or justification, were intentional, malicious, reckless and in bad faith.

41. As a direct and proximate result of defendants' actions, plaintiff was deprived of rights, privileges and immunities under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the City of New York and the State of New York.

42. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to properly sanction or discipline police officers including the defendants in this case, for violations of the constitutional rights of citizens, thereby causing police officers including defendants in this case, to engage in unlawful conduct.

43. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to sanction or discipline police officers including the defendants in this case, who are aware of and subsequently conceal violations of the constitutional rights of citizens by other police officers thereby causing and encouraging police officers including defendants in this case, to

engage in unlawful conduct.

44. That the defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and over the NYPD

45. Defendant New York City had actual or constructive knowledge that there was inadequate supervision over and /or within the NYPD with respect to its members' abuse of their authority, abuse of arrest powers and other blatant violations of the United States Constitution and rules and regulations of the NYPD. Despite ample notice and/or knowledge of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put in place to ensure that NYPD members engaged in police conduct in a lawful and proper manner, inclusive of use of their authority as law enforcement officers with respect to the general public and specifically the plaintiff herein.

46. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic and institutional misuse and abuse of police authority by its NYPD employees and thereby deliberately and intentionally adopted, condoned and otherwise created through deliberate inaction and negligent supervision and NYPD policy, practice and custom of utilizing illegal and impermissible searches, arrests and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond plaintiff's arrest.

47. That all of the acts and omissions by the defendant officers described above were carried out pursuant to overlapping policies and practices of the municipal

defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

48. The existence of the unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in a long history of civil actions in state and federal courts.

49. In an Order dated November 25, 2009, in Colon v. City of New York, 09 CV 0008 (EDNY), the court held that:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration—through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

50. That on more than half of the occasions where the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

51. That the defendant New York City has not only tolerated,

but actively fostered a lawless atmosphere within the NYPD
and that the City of New York was deliberately indifferent
to the risk and the inadequate level of supervision would
lead to violation of individuals constitutional rights in
general, and caused the violation of plaintiff's rights in
particular.

52. The actions of all defendants, acting under color of State
law, deprived plaintiff of his rights, privileges and
immunities under the laws and Constitution of the United
States; in particular, the rights to be secure in his
person and property, to be free from the excessive use of
force and from malicious prosecution, abuse of process, and
the right to due process.

53. By these actions, defendants have deprived plaintiff of
rights secured by the Fourth, Fifth, and Fourteenth
Amendments to the United States Constitution, in violation
of 42 U.S.C. Section 1983.

54. This action has been commenced within one year and ninety
days after the happening of the event upon which the claim
is based.

**AS A FIRST CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER FALSE
ARREST AND FALSE IMPRISONMENT UNDER 42 U.S.C § 1983/NEW YORK
STATE LAW**

55. By this reference, plaintiffs incorporates each and every
allegation and averment set forth in paragraphs 1 through
54 of this complaint as though fully set forth herein.

56. The arrest, detention and imprisonment of plaintiffs were
without just or probable cause and without any warrant or
legal process directing or authorizing the plaintiff's
arrest or subsequent detention.

57. As a result of plaintiffs' false arrest and imprisonment,

they have been caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know them, was prevented from attending to their necessary affairs, and have been caused to incur legal expenses, and have been otherwise damaged in his character and reputation.

58. Consequently, plaintiffs have been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

59. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

60. This action falls within one or more of the exceptions of the New York State Civil Practice Law and Rules §1602.

## AS A SECOND CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER: EXCESSIVE FORCE UNDER 42 U.S.C § 1983

61. By this reference, the plaintiffs incorporates each and every allegation and averment set forth in paragraphs 1 through 60 of this complaint as though fully set forth herein.

62. The level of force employed by one or more of the defendant officers was objectively unreasonable and in violation of the plaintiff's constitutional rights.

63. As a result of the aforementioned conduct of the defendant officers, the plaintiffs were subjected to excessive force, resulting in serious and severe physical injuries.

64. As a consequence of the defendant officers' individual

and/or collective actions as set forth above, the plaintiffs suffered serious personal injuries, and his constitutional rights were violated. Plaintiffs hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against the defendant officers, individually and severally.

### AS A THIRD CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER: UNLAWFUL SEARCH UNDER 42 U.S.C § 1983

65. By this reference, the plaintiffs incorporates each and every allegation and averment set forth in paragraphs 1 through 64 of this complaint as though fully set forth herein.

66. Following the plaintiff's arrest, the defendant officers searched and/or strip-searched and/or caused the plaintiff and/or his property to be searched and/or strip-searched, without any individualized reasonable suspicion that he was concealing weapons or contraband.

67. As a result of the foregoing, the plaintiffs were subjected to an illegal and improper search and/or strip-search.

68. The foregoing unlawful search violated the plaintiffs' constitutional right to privacy, as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

69. As a consequence of the defendant officers' individual and/or collective actions as set forth above, the plaintiff suffered a significant loss of liberty, humiliation, mental anguish, depression, and his constitutional rights were violated. Plaintiffs hereby demands compensatory damages and punitive damages in an amount to be determined at trial, against the defendant officers, individually and severally.

**AS A FOURTH FIFTH CAUSE OF ACTION: AGAINST EACH DEFENDANT
OFFICER: FAILURE TO INTERVENE UNDER 42 U.S.C § 1983**

70. By this reference, the plaintiffs incorporates each and
every allegation and averment set forth in paragraphs 1
through 69 of this complaint as though fully set forth
herein.

71. Each defendant officer had an affirmative duty to intervene
on the plaintiff's behalf to prevent the violation to his
constitutional rights, as more fully set forth above.

72. Each defendant officer failed to intervene on the
plaintiff's behalf to prevent the violation of his
constitutional rights, despite having had a realistic and
reasonable opportunity to do so. 75. As a consequence of
the defendant officers individual and/or collective
actions, the plaintiff suffered loss of liberty,
humiliation, mental anguish, depression, loss of wages from
work, serious personal injuries, and his constitutional
rights were violated. Plaintiff hereby demands compensatory
damages and punitive damages, in an amount to be determined
at trial, against the defendant officers, individually and
severally.

**AS A FIFTH CAUSE OF ACTION: AGAINST EACH DEFENDANT OFFICER:
DENIAL OF A CONSTITUTIONAL RIGHT TO A FAIR TRIAL UNDER 42 U.S.C
§ 1983 DUE TO THE FABRICATION/FALSIFICATION OF EVIDENCE**

73. By this reference, plaintiffs incorporates each and every
allegation and averment set forth in paragraphs 1 through
72 of this complaint as though fully set forth herein.

74. Each defendant officer created false evidence against the
plaintiffs.

75. Each defendant officer forwarded false evidence and false

information to the prosecutors in the Kings County District Attorney's office.

76. Each defendant officer was directly involved in the initiation of criminal proceedings against the plaintiffs.

77. Each defendant officer lacked probable cause to initiate criminal proceedings against the plaintiff.

78. Each defendant officer acted with malice in initiating criminal proceedings against the plaintiff.

79. Each defendant officer was directly involved in the continuation of criminal proceedings against the plaintiffs.

80. Each defendant officer lacked probable cause in continuing criminal proceedings against the plaintiffs.

81. Each defendant officer acted with malice in continuing criminal proceedings against the plaintiff.

82. Each defendant officer misrepresented and falsified evidence throughout all phases of the criminal proceeding.

83. Each defendant officer misrepresented and falsified evidence to the prosecutors in the Richmond County District Attorney's office.

84. Each defendant officer withheld exculpatory evidence from the prosecutors in the Richmond County District Attorney's office.

85. Each defendant officer did not make a complete statement of facts to the prosecutors in the Richmond County District Attorney's office.

86. By creating false evidence against the plaintiffs; forwarding false evidence and information to the prosecutors; and by providing false and misleading testimony throughout the criminal proceedings, each defendant officer violated the plaintiff's constitutional right to a fair trial under the Due Process Clause of the

Fifth and Fourteenth Amendments to the United States Constitution.

87. As a consequence of the defendant officers' actions, the plaintiffs suffered loss of liberty, humiliation, mental anguish, depression, loss of wages from work, and his constitutional rights were violated. Plaintiffs hereby demands compensatory damages and punitive damages in an amount to be determined at trial, against each defendant officer, individually and severally.

## AS AN SIXTH CAUSE OF ACTION AGAINST THE DEFENDANT CITY OF NEW YORK: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983

88. By this reference, plaintiffs incorporates each and every allegation and averment set forth in paragraphs 1 through 87 of this complaint as though fully set forth herein.

89. The defendant officers arrested and incarcerated the plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize the plaintiff's liberty, well-being, safety and constitutional rights.

90. The acts complained of were carried out by the individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

91. The defendant officers acted under color of law, in their official capacity, and their acts were performed pursuant to the customs, policies, usages, practices, procedures and rules of the City of New York and its police department.

92. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and its police department include, but are not limited to the following unconstitutional practices:

a. Wrongfully arresting individuals on the pretext that they Are/were involved in illegal vice transactions;

b. manufacturing evidence against individuals allegedly involved in illegal vice transactions;

c. unlawfully searching detainees and/or their property in the absence of any reasonable suspicion that said individuals were concealing weapons or contraband;

d. arresting innocent persons in order to meet "productivity" goals (i.e. arrest quotas); and

e. wrongfully and unreasonably brutalizing innocent members of the public, despite the lack of probable cause to do so.

93. The aforesaid event was not an isolated incident. The City and its police commissioner has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City and its police commissioner have allowed policies and practices that allow the aforementioned to persist.

94. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In

addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

95. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event, such as the matter at bar, that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which has been done on many occasions.

96. Further, the City and its police commissioner have no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected.

97. Additionally, according to a report of the New York City Bar Association issued in 2000, the City and Kelly have isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome

of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

98. The existence of the aforesaid unconstitutional customs and policies may also be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on January 20, 2006, that commanders are permitted to set "productivity goals".

99. Furthermore, the existence of the aforesaid unconstitutional customs and policies may also be inferred from the ruling (Docket entry 32) of the Court (Eastern District of New York), in the case(s) of Jose Colon v. City of New York, et al (09-cv-8) and Maximo Colon v. City of New York, et al (09-cv-9), wherein the Court stated, *inter alia*, that "*Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting officers of the New York City Police Department*", and that "*there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving the illegal conduct of the kind now charged*".

100. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, constituted a deliberate indifference to the safety, well-being and constitutional rights of all defendants, including but not limited to the plaintiff; were the proximate cause of, and moving force behind, the constitutional violations suffered by the plaintiff as alleged herein, and deprived plaintiff of the following rights, privileges and immunities secured

to him by the Constitution of the United States:

(a)   The right of the plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

(b)   The right of the plaintiff not to be deprived of life, liberty, or property without due process of law, and the right to the equal protection of the laws, secured to him by the Fifth and Fourteenth Amendments to the Constitution of the United States.

(c)   The right to be free from unreasonable detention and/or continued detention without probable cause in that the plaintiff was detained.

(d)   The right to be free from the use of excessive force.

101. As a result of the actions of the defendants, the plaintiff was deprived of his rights, privileges, and immunities secured by the United States Constitution, in particular, the Fourth, Fifth, and Fourteenth Amendments, in contravention of 42 USC §1983 and the laws of New York State, and New York City without just or legal cause when defendant City, by its employees and/or agents unlawfully arrested and imprisoned the plaintiff thereby depriving him of his liberty without due process of law.

102. The defendant officers were the actual agents of the defendant City of New York and were following the customs, practices, ordinances and/or regulations of the City of New York when they violated the plaintiff's constitutional and civil rights, and the City of New York is therefore responsible for their acts, and liable to the plaintiff for the damages he suffered.

103. The actual principal/agent relationship between defendant

City and the defendant officers was created by the fact they were employees of defendant City, and the City had the right to, and it did indeed regulate and control the activities and conduct of the defendant officers.

104. The defendant officers actions were vicious, wicked, cold-hearted, intentional, malicious, unwarranted and in violation of the law. The individual defendants had full knowledge that the charges made before the Court against the plaintiff were false and untrue.

## AS A SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS: ASSAULT AND BATTERY

105. Plaintiff repeats and realleges paragraphs 1 through 104 as if each paragraph is repeated verbatim herein.

106. At the time of the plaintiff's arrest by the defendant officers, the plaintiff did not challenge nor resist the defendants, nor engage in any threatening behavior towards the defendants.

107. However, as set forth above, the defendant officers assaulted the plaintiff, battered the plaintiff, and subjected the plaintiff to excessive force and summary punishment.

108. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers' acts as described above.

109. Consequently, the plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against the defendants, individually and severally.

110. This action, upon information and belief, falls within one or more of the exceptions of CPLR 1602.

## AS A NINTH CAUSE OF ACTION AGAINST ALL DEFENDANTS: NEGLIGENCE

111. Plaintiff repeats and realleges paragraphs 1 through 110 as if each paragraph is repeated verbatim herein.

112. As a direct and proximate result of the negligent acts and/or omissions of the defendants as set forth herein, the plaintiffs suffered physical injury, conscious pain and suffering, medical expenses, and mental anguish.

113. That by reason of the said negligence, the plaintiffs suffered and still suffers bodily injuries, became sick, sore, lame and disabled and has remained sick, sore, lame and disabled since the aforesaid incident; has suffered great pain, agony and mental anguish and is informed and verily believes that he will continue to suffer for a long time to come and that said injuries are permanent; has suffered economic loss inasmuch as he was forced to, and is still forced to expend sums of money on medical treatment; that he was deprived of his pursuits and interests and verily believes that in the future he will continue to be deprived of such pursuits; and that said injuries are permanent. The defendant officers were at all material times acting within the scope of their employment, and as such, the City defendant is vicariously liable for the defendant officers acts as described above.

114. This cause of action, upon information and belief, falls within one or more of the exceptions of CPLR 1602.

**WHEREFORE**, plaintiff respectfully requests judgment against the Defendants as follows:

1. For compensatory damages against all defendants in an amount to be proven at trial;

2. For exemplary and punitive damages against all defendants in an amount to be proven at trial;

3. For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

4. For such other and further relief as the court deems proper.


Dated: January 29, 2014
       Brooklyn, New York


                    O'keke& Associates, PC.


                    _____
                    Patrick O'keke, Esq. (PO-2861)
                    O'keke& Associates, PC.
                    Attorney for Plaintiff
                    801 Franklin Avenue
                    Brooklyn, New York 11238
                    Tel. (718) 855-9595

Civil Case Number:_____ Attorney: PATRICK O'KEKE [2861]

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

LORI CROSBY                                                    Plaintiff(s),


    against


THE CITY OF NEW YORK,
JOHN DOE and JANE DOE 1-6

                                                    Defendant(s).

---

**SUMMONS & COMPLAINT**
**DEMAND TRIAL BY JURY**

---

**O'keke & Associates, PC**
801 FRANKLIN AVENUE, BROOKLYN NY, 11238
PHONE: (718) 855-9595  FAX: (718) 855-9494
EMAIL: polawuk@aol.com,

---

To:


Defendants/Attorney(s) For Defendants.

---

Service of a copy of the within is hereby admitted

Dated:_____

Attorney(S) For:_____

---